DAVID B. BARLOW, United States Attorney (#13117)
DANIEL D. PRICE, Assistant United States Attorney (#2646)
185 South State Street, Suite 300
Salt Lake City, UT 84111
Tel.: (801) 524-5682
daniel.price2@usdoj.gov

MARTA CAMPOS, Trial Attorney (pending admission *pro hac vice*)
SAMUEL G. HALL, Trial Attorney (pending admission *pro hac vice*)
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W. – NWB
Washington, DC  20530
Tel.: (202) 514-4733 and (202) 353-4096
Fax: (202) 514-1116
marta.campos@usdoj.gov
samuel.hall2@usdoj.gov

Attorneys for the United States of America

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUN 27 2014

D. MARK JONES, CLERK
BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-CV-00454 |
| | ) | |
| SYNCHRONY BANK, formerly known as | ) | |
| GE CAPITAL RETAIL BANK, | ) | Magistrate Judge Brooke C. Wells |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONSENT ORDER

### I.    INTRODUCTION

This Consent Order is submitted jointly by the parties for the approval of and entry by the

Court. The Consent Order resolves the claim of the United States, based on coordinated investigations by the Department of Justice ("DOJ") and the Consumer Financial Protection Bureau ("CFPB"), that Synchrony Bank, formerly known as GE Capital Retail Bank[1] ("the Bank") engaged in a pattern or practice of conduct in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, and its implementing regulation, Regulation B, 12 C.F.R., Part 1002 ("Regulation B"). Specifically, the United States alleges that the Bank discriminated on the basis of national origin by excluding Borrowers who had "Spanish-preferred" indicators on their accounts or Borrowers with mailing addresses in Puerto Rico ("the Offer Exclusions") from two direct-mail debt-repayment programs: the "Statement Credit Offer" and the "Settlement Offer."

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The parties have entered into this Consent Order to avoid the risks, expense, and burdens of litigation and to resolve voluntarily the claim in the United States' Complaint of the Bank's alleged violations of ECOA.

## II. **DEFINITIONS**

For purposes of this Consent Order, the following definitions shall apply:

      a.    "Bank" shall mean Synchrony Bank, formerly known as GE Capital Retail Bank, and its successors and assigns.

      b.    "Board" shall mean the Bank's duly elected and acting Board of Directors.

      c.    "Borrower" shall mean any person who opened a credit card account issued by the Bank.

---

[1] GE Capital Retail Bank was renamed Synchrony Bank on June 2, 2014.

2

d.  "Charged-off" shall mean a determination by the Bank that an unpaid

balance on an account is not collectible.  Charged-off accounts may have

been sold to third-party debt collectors.

e.  "Collection Offers" shall mean the Statement Credit Offer and the

Settlement Offer, as described in Paragraphs 12 and 13 of the United

States' Complaint.

f.  "Defendant" shall mean Synchrony Bank, formerly known as GE Capital

Retail Bank  and its successors and assigns.

g.  "Effective Date" shall mean the date on which this Consent Order is

approved and entered by the Court.

h.  "Eligible Offer Exclusion Borrowers" shall mean Borrowers who had

"Spanish-preferred" indicators on their accounts or who had mailing

addresses in Puerto Rico and, as a result, were excluded from the

Collection Offers at any time during the Offer Exclusion Relevant Time

Period.

i.  "Offer Exclusion Relevant Time Period" shall mean January 1, 2009

through March 31, 2012.

j.  "Regional Director" shall mean the Regional Director for the West Region

for the Office of Supervision for the CFPB, or his or her delegee.

k.  "Settlement Date" shall mean the date on which this Consent Order is

submitted to the Court, except that no deadline calculated based on the

Settlement Date shall fall less than five (5) days after the Effective Date.

    l.       "Spanish-preferred" shall mean a notation in a Borrower's account

indicating a preference for communications relating to the account in

Spanish rather than English.

### III.    BACKGROUND

Through the course of its supervisory activity, the CFPB has reviewed the Bank's

exclusion of Borrowers who had "Spanish-preferred" indicators on their accounts or with

mailing addresses in Puerto Rico from receiving a benefit under two direct-mail debt-repayment

programs. The Bank self-identified and reported the exclusions to the CFPB. Following the

CFPB's review, on March 3, 2014, the CFPB referred the matter to the Attorney General through

the Civil Rights Division of the Department of Justice pursuant to Section 706(g) of ECOA and

the December 6, 2012 Memorandum of Understanding between the DOJ and the CFPB. On

March 12, 2014, the DOJ initiated an investigation under ECOA of the Offer Exclusions in

coordination with the CFPB's investigation.

In its Complaint, the United States alleges that between January 2009 and March 2012,

the Bank, through the Offer Exclusions, engaged in a pattern or practice of discrimination on the

basis of national origin in violation of ECOA.

The Bank neither admits nor denies the allegations and claim of a pattern or practice of

discrimination in violation of ECOA as set forth in the United States' Complaint. Under the

provisions of this Consent Order, the Bank agrees to implement policies and procedures designed

to ensure that future credit card lending is done in a nondiscriminatory manner consistent with

ECOA and the Compliance Plan, as set forth in Section IV. B., below. In addition, the Bank will

compensate those borrowers the Bank excluded from two of its credit card debt-repayment

programs.

## IV.    INJUNCTIVE RELIEF

1.        Defendant and its officers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, are enjoined from engaging in any act or practice that discriminates on the basis of national origin in any aspect of Borrowers' credit transactions with Defendant, including, but not limited to, provision of the Collection Offers to borrowers.

### A.    ACTION PLAN

2.        Within 90 days of the Settlement Date, Defendant shall submit to the DOJ and the Regional Director a plan to address the actions that are necessary and appropriate to achieve compliance with this Consent Order (Action Plan).  The Action Plan shall specify timelines for completion of each of the requirements of this Consent Order that have not already been completed and shall designate and certify those items that have been completed.  The timelines in the Action Plan shall be consistent with all deadlines in this Consent Order, unless modified in writing by the DOJ and the Regional Director.

3.        Defendant's existing Audit Committee, which is composed of independent directors, shall be responsible for monitoring and ensuring Defendant's compliance with this Consent Order.

4.        The Action Plan shall include provisions requiring Defendant, within 30 days after the end of each quarter and until all items in the Action Plan have been completed, to submit a written progress report (Quarterly Progress Report) to the Board setting forth in detail the actions taken to comply with this Consent Order, and the results and status of those actions.

5.        The Action Plan shall also include provisions requiring that, upon receiving the Quarterly Progress Report, the Board shall forward a copy of the Quarterly Progress Report, with

any additional comments by the Board, to the DOJ and the Regional Director within 10 days of the first Board meeting following receipt of such report.

6.        The Board or a Committee thereof shall ensure the Action Plan is submitted to the DOJ and the Regional Director for review and determination of non-objection. In the event that the DOJ and the Regional Director direct Defendant to revise the Action Plan, Defendant shall make the revisions and resubmit the Action Plan to the DOJ and the Regional Director within 30 days of the date of notification of the need for revisions.

7.        Upon receipt of a determination of non-objection from the DOJ and the Regional Director to the Action Plan, the Audit Committee shall ensure Defendant's adoption, implementation, and adherence to the Action Plan.

8.        Any material proposed changes or deviations from the approved Action Plan shall be submitted in writing to the DOJ and the Regional Director for review and determination of non-objection. In the event that the DOJ and the Regional Director direct Defendant to revise the changes to the Action Plan, Defendant shall make the revisions and resubmit the Action Plan to the DOJ and the Regional Director within 30 days of the date of notification of the need for revisions.

B.      **COMPLIANCE PLAN**

9.        Defendant represents that as of March 2012, (a) Borrowers with "Spanish-preferred" indicators on their accounts or with addresses in Puerto Rico are being included in the Settlement Offer, and (b) the Statement Credit Offer was completely discontinued.  Defendant has also represented that it has taken the following actions:

        a.        it has taken steps to improve its compliance management system with
                respect to fair lending; and

        b.        it has reacquired accounts of certain Eligible Offer Exclusion Borrowers
                that were sold to third-party debt collectors, and provided the benefits of

6

the Offers or their equivalent value as well as other relief to approximately

84,000 Eligible Offer Exclusion Borrowers; as a result, to date Defendant

has provided $131.8 million of remediation to affected Borrowers in the

form of monetary payments, credits, and waivers on accounts,

representing the value of the excluded offer, lost interest, and indirect

damages. Of that total, $6.1 million represents payments to affected

Borrowers; $2.9 million represents credits and waivers on accounts

Defendant has not charged-off; $68.4 million represents credits on

accounts that Defendant has charged-off; and $54.4 million represents

waivers on accounts that Defendant has charged-off.[2]

10.      Defendant is prohibited from excluding Borrowers from any aspect of its credit

offers because they have "Spanish-preferred" indicators on their accounts, and prohibited from

impermissibly excluding borrowers from any aspect of its credit offers because those borrowers have

a mailing address in Puerto Rico.

11.      Within 90 days of the Settlement Date, Defendant shall provide an Offer

Exclusion Compliance Plan to the DOJ and the Regional Director for prior determination of non-

objection, which may be satisfied in whole or in part by Defendant's existing fair lending program.

In the event that the DOJ and the Regional Director direct Defendant to revise the Offer Exclusion

Compliance Plan, Defendant shall make the revisions and resubmit the Offer Exclusion Compliance

Plan to the DOJ and the Regional Director within 30 days of the date of notification of the need for

revisions. The Offer Exclusion Compliance Plan shall include the following:

---

[2]  "Waivers" refers to the deletion of a borrower's account balance, whereas "credits" refers to
the reduction of a borrower's account balance.

a.    a review of all aspects of Defendant's current credit offer strategies, including collections strategies, for its "Spanish-preferred" indicator Borrowers and Borrowers with mailing addresses in Puerto Rico for compliance with ECOA and Regulation B, including, but not limited to, a review designed to ensure that these Borrowers have not been adversely affected in any aspect of the terms or conditions of credit offers with Defendant as compared with Defendant's other Borrowers. If in connection with this review, Defendant identifies any violation or potential violation of ECOA and Regulation B, within 60 days of completing the review, Defendant shall notify the DOJ and the Regional Director and include details regarding the harm, proposed corrective action, and timeline for implementation;

b.    fair lending training to its employees, including its collections unit, to include an explanation of the national origin discrimination resulting from the exclusion of Borrowers with "Spanish-preferred" indicators on their accounts or mailing addresses in Puerto Rico;

c.    a formal process for reviewing for compliance with ECOA and Regulation B all new or modified collections strategies and credit card terms and conditions;

d.    participation of its Fair Lending Officer in Defendant's Credit Strategies Sub-Committee; and

e.    implementation of a regular and periodic schedule for Defendant's Internal Audit department to assess compliance with ECOA and

Regulation B.  Such assessments shall occur at least annually.  Within ten (10) days of completing each assessment, the Internal Audit department shall provide its written findings to the Audit Committee and the Regional Director.

12.    Upon receipt of a determination of non-objection from the DOJ and the Regional Director to the Offer Exclusion Compliance Plan, the Board or a Committee thereof shall ensure Defendant's adoption, implementation, and adherence to the Offer Exclusion Compliance Plan.  Any material proposed changes or deviations from the approved Offer Exclusion Compliance Plan shall be submitted in writing to the DOJ and the Regional Director for review and determination of non-objection. In the event that the DOJ and the Regional Director direct Defendant to revise the changes to the Offer Exclusion Compliance Plan, Defendant shall make the revisions and resubmit the Offer Exclusion Compliance Plan to the DOJ and the Regional Director within 30 days of the date of notification of the need for revisions.

C.    **ROLE OF THE BOARD**

13.    Unless otherwise specified in this Consent Order, the Board shall ensure that all submissions required by this Consent Order (including plans, reports, programs, policies, and procedures) are submitted to the DOJ and the Regional Director.

14.    Although this Order requires Defendant to submit certain documents for the determination of non-objection by the DOJ and the Regional Director, the Board shall have the ultimate responsibility for proper and sound management of Defendant and for ensuring that Defendant complies with this Consent Order.

15.    With the prior non-objection of the DOJ and the Regional Director, the Board may delegate the approval or reporting obligations included in this Consent Order to the Audit Committee.

16.    In each instance in this Consent Order in which the Board or a Board committee is required to ensure adherence to, or undertake to perform certain obligations, under this Consent Order, the Board, directly or through the Audit Committee, shall:

    a.    authorize and adopt such actions on behalf of Defendant as may be necessary for Defendant to perform its obligations and undertakings under the terms of this Consent Order;

    b.    require the timely reporting by Defendant's management of such actions directed by the Board to be taken under this Consent Order;

    c.    cure any material non-compliance with such actions in a timely and appropriate manner; and

    d.    require corrective action be taken in a timely manner of any material non-compliance with such actions.

## V.    **MONETARY PROVISIONS**

### A.    **SETTLEMENT FUND**

17.    Within 10 days of the Settlement Date, Defendant shall set aside $2 million, in a segregated account for the purpose of providing redress required by this Section to Eligible Offer Exclusion Borrowers that have not yet been remediated by the Bank as set forth in Paragraph 9(b). Defendant will apply an additional $35 million in credits and waivers to balances on charged-off accounts. This represents a total of $37 million in payments, credits, and waivers.

18.    Within 90 days of the Settlement Date, Defendant shall submit to the DOJ and the Regional Director for review and non-objection a comprehensive written plan for providing redress to Eligible Offer Exclusion Borrowers consistent with this Consent Order (the Offer Exclusion Redress Plan). The DOJ and the Regional Director shall have the discretion to make a determination of non-objection to the Offer Exclusion Redress Plan or direct Defendant to revise the Plan. In the

event that the DOJ and the Regional Director direct Defendant to revise the Redress Plan, Defendant shall make the revisions and resubmit the Redress Plan to the DOJ and the Regional Director within 30 days of the date of notification of the need for revisions.  Upon notification that the DOJ and the Regional Director have made a determination of non-objection to the Redress Plan, Defendant shall implement and adhere to the steps, recommendations, deadlines, and timeframes set forth in the Redress Plan (to the extent not already implemented).

19.    Within 90 days from completion of the Redress Plan, Defendant shall submit an Offer Exclusion Redress Plan Report to the DOJ and the Regional Director. The Offer Exclusion Redress Plan Report shall include Defendant's Internal Audit department's review and assessment of its compliance with the terms of the Offer Exclusion Redress Plan, including:

a.    the methodology used to determine the population of Eligible Offer Exclusion Borrowers;

b.    the amount of redress for each Eligible Offer Exclusion Borrower;

c.    the total number of Eligible Offer Exclusion Borrowers;

d.    the procedures used to issue and track redress payments;

e.    the procedures used for reporting and requesting the reporting of updated balances to all three major credit reporting agencies – Experian, Equifax, and TransUnion – including, as appropriate, deleting trade lines, or adjusting payment histories;

f.    an accounting of amounts Defendant represents that it has already provided to Eligible Offer Exclusion Borrowers prior to the Settlement Date; and

g.    the work of independent consultants that Defendant has used, if any, to assist and review its execution of the Offer Exclusion Redress Plan.

20.    Defendant shall provide all relief to Borrowers required by this Consent Order, regardless of whether the total of such relief exceeds the amount reserved or deposited into a segregated account under this Section.

21.    Upon Defendant's completion of the Offer Exclusion Redress Plan Report, and in the event that funds remain after Defendant provides redress to Eligible Offer Exclusion Borrowers as set forth in Paragraph 25, all money not distributed to the Eligible Offer Exclusion Borrowers shall be distributed by Defendant to one or more organizations that provide services, including credit counseling, financial literacy, and other related programs, targeted at Hispanic borrowers ("Qualified Organization"). Before selecting the Qualified Organization(s), Defendant will (1) obtain proposals from the Organization(s) on how the funds will be used consistent with the above-stated purpose, and (2) submit selected proposals from the Organization(s), and the proposed amount of funds each Organization would receive, to the DOJ and the CFPB within thirty (30) days of the date that Defendant completes the Offer Exclusion Redress Plan Report. The DOJ shall consult with the CFPB in providing its non-objection and shall notify Defendant within thirty (30) days of the submission. Defendant and the DOJ, in consultation with the CFPB, may request modification of an Organization's proposal before approving the Organization(s). Qualified Organization(s) must not be affiliated with Defendant, Defendant's parent, or any affiliated entity of Defendant's parent.

22.    The parties shall obtain the Court's approval of the selection of the Qualified Organization(s) and the amount to be distributed to each Qualified Organization prior to distribution as provided by Paragraph 21. Within fifteen (15) days after the DOJ's non-objection to the Qualified Organization(s), the parties shall move the Court to authorize the distribution of the funds.

The parties shall provide the Court with information regarding how the Qualified Organization(s) meet the requirements set forth in Paragraph 21.

  23.  Within one year after the funds are distributed and every year thereafter until the funds are exhausted, Defendant shall require each Qualified Organization to submit to Defendant a report detailing that funds are utilized for the purposes identified in Paragraph 21. Defendant shall submit those reports to the DOJ and the CFPB within thirty (30) days of receiving them. For any Qualified Organization that does not provide such a report, Defendant shall require that the funds be returned to Defendant for redistribution to the other Organization(s) approved to receive funds.

  24.  Defendant shall not require any Eligible Offer Exclusion Borrower to waive any right as a condition of receiving the payment of any redress under this Order.

**B.**  **REDRESS PLAN**

  25.  The Redress Plan shall:

    a.  Apply to all Eligible Offer Exclusion Borrowers;

    b.  Provide for processes covering all Eligible Offer Exclusion Borrowers regardless of their current account status with Defendant, including open and closed accounts, both with and without a balance, and regardless of whether or not Defendant charged-off or reacquired the accounts. The processes shall include the following requirements:

      (i)  for any open credit card account, Defendant shall apply a statement credit to the account or otherwise send a check to the Eligible Offer Exclusion Borrower;

      (ii)  for any closed or inactive credit card account with a zero balance at the time of redress, Defendant shall send a check to any Eligible Offer Exclusion Borrower;

    (iii)    for any charged-off or reacquired accounts, Defendant shall issue a credit decreasing the charged-off balance by the amount of redress; where the redress is greater than the existing charged-off balance, Defendant shall send the Eligible Offer Exclusion Borrower a check in the amount of the excess;

    (iv)    for any credit card account for which Defendant suspends collection efforts or reduces the remaining balance to zero, notice of that suspension or balance reduction shall be sent to the Eligible Offer Exclusion Borrower; such notice shall be sent to the borrower in Spanish if the Eligible Offer Exclusion Borrower has a "Spanish-preferred" indicator on his or her account;

    (v)    if the Eligible Offer Exclusion Borrower is deceased, and the balance is greater than the redress, Defendant will apply a statement credit to the account; otherwise, a refund check shall be issued to the Eligible Offer Exclusion Borrower's estate; and

    (vi)    with respect to any bankruptcy and accounts in litigation, Defendant shall make the redress in accordance with applicable law.

c.    Include a description of the following:

    (i)    methods used and the time necessary to compile a list of potential Eligible Offer Exclusion Borrowers;

    (ii)    methods used to calculate the amount of redress to be paid to each Eligible Offer Exclusion Borrower as required herein;

(iii) procedures for issuance and tracking of redress to each Eligible

Offer Exclusion Borrower; and

(iv) procedures for monitoring compliance with the Redress Plan.

26.     At a minimum, Defendant shall provide to each Eligible Offer Exclusion

Borrower:

a. the original value of the excluded offer plus interest, calculated from the

date they should have initially received the offer until the earlier of (i) the

approximate date they received the benefit of the offer, or (ii) the date

their account was charged-off;

b. for closed accounts, Defendant shall request that the credit reporting

agencies to which it furnishes information delete any trade lines for

accounts that did not receive a Collection Offer under the practices

described in the Complaint; and

c. for accounts that were closed with balances, including accounts that were

charged-off or reacquired during or after the Offer Exclusion Relevant

Time Period, given the difficulty in calculating specific indirect damages

resulting from the exclusion from the Offers, Defendant shall suspend

collection efforts and reduce the remaining balances to zero.

27.     With respect to redress to be paid to Eligible Offer Exclusion Borrowers, the

Redress Plan shall include: (1) the form of the letter to be sent notifying Eligible Offer Exclusion

Borrowers of the redress (Redress Notification Letter); and (2) the form of the envelope that will

contain the Redress Notification Letter. The letter shall include language explaining the manner in

which the amount of redress was calculated; an explanation of the use of a credit and/or check as

applicable; and a statement that the provision of the refund payment is in accordance with the terms of this Consent Order. The letter shall be sent to the consumer in Spanish if the Eligible Offer Exclusion Borrower has a "Spanish-preferred" indicator on his or her account. The Bank shall provide the DOJ and the Regional Director with samples of each letter it will send as required by Paragraph 25(b)(iv) and this Paragraph, and receive the DOJ and the Regional Director's non-objection to the sample letters, before mailing any letters required under Paragraph 25(b)(iv) and this Paragraph. Defendant shall not include in any envelope containing a Redress Notification Letter any materials other than the approved letters, and when appropriate, redress checks, unless Defendant has obtained written confirmation from the DOJ and the Regional Director that they do not object to the inclusion of such additional materials.

28.     Throughout the course of the DOJ's and the CFPB's review of this matter, Defendant proposed, modified, and implemented a number of redress steps outlined above, which provided relief to approximately 84,000 borrowers with "Spanish-preferred" indicators on their accounts or with mailing addresses in Puerto Rico. This resulted in $131.8 million of remediation to affected borrowers, which reflects the value of the excluded offer, lost interest, and indirect damages. Of that total, $6.1 million represents payments to affected borrowers; $2.9 million represents credits and waivers on accounts Defendant has not charged-off; $68.4 million represents credits on accounts that Defendant has charged-off; and $54.4 million represents waivers on accounts that Defendant has charged-off. Accordingly, this redress and relief shall be certified and documented as part of the Offer Exclusion Redress Plan and Offer Exclusion Redress Plan Report and be subject to the requirements of this Consent Order, and shall include confirmation of those amounts Defendant has provided to Eligible Offer Exclusion Borrowers.

29.     When Defendant's remediation is completed, it will apply to, in total, approximately 108,000 eligible borrowers with a "Spanish-preferred" indicator on their accounts or with a mailing address in Puerto Rico.  Defendant will provide remediation in the amount of at least $169 million to affected borrowers in the form of monetary payments, credits, and waivers on accounts, representing the value of the excluded offer, lost interest, and indirect damages.  Of that total, $8 million represents payments to affected borrowers; $3 million represents credits and waivers on accounts Defendant has not charged-off; $86 million represents credits on accounts that Defendant charged-off; and $72 million represents waivers on accounts that Defendant has charged-off.

30.     The review and determination of non-objection by the DOJ and the CFPB to the Offer Exclusion Redress Plan shall satisfy fully the claim of the United States for damages and other monetary relief related to the practices described in the Complaint.

C.     **ADDITIONAL MONETARY PROVISIONS**

31.     In the event of any default on Defendant's obligations to make payment under this Consent Order, interest (computed under 28 U.S.C. § 1961) shall accrue on any outstanding amounts not paid from the date of default to the date of payment and shall immediately become due and payable.

32.     Defendant shall relinquish all dominion, control, and title to the payments detailed in this Consent Order to the fullest extent permitted by law, and no part of the funds shall be returned to Defendant.

VI.     **REPORTING REQUIREMENTS**

33.     Defendant shall notify the DOJ and the Regional Director of any change in Defendant that may affect compliance obligations arising under this Consent Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the

17

emergence of a successor company, or the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order.

## VII.   <u>ADMINISTRATIVE PROVISIONS</u>

### A.   ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

34.      Within 30 days of the Settlement Date, Defendant shall deliver a copy of this Consent Order to each member of the Board and each executive officer, as well as any managers, employees, or other agents and representatives who have managerial-level responsibilities related to the subject matter of the Order or otherwise have responsibilities for implementing this Order.

35.      Until the termination of this Consent Decree, Defendant shall deliver a copy of this Consent Order to any business entity resulting from any change in structure, to any future members of the Board and executive officers, as well as to any managers, employees, or other agents and representatives who will have managerial-level responsibilities related to the subject matter of the Consent Order, before they assume their responsibilities.

36.      Defendant shall secure a signed and dated statement acknowledging receipt of a copy of this Consent Order, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 30 days of delivery, from all persons required to receive a copy of this Consent Order under this Section.

### B.   RECORDKEEPING

37.      For the duration of this Consent Decree, Defendant shall create, retain, and make available to the DOJ and the CFPB upon request, all documents and records necessary to demonstrate full compliance with each provision of this Consent Order, including all submissions to the DOJ and the CFPB and all documents and records pertaining to the redress provisions, as set forth in Section V above.

## C.     NOTICES

38.     Unless otherwise directed in writing by the DOJ and the CFPB, all submissions,

requests, communications, consents, or other documents relating to this Consent Order shall be in

writing and shall be sent by overnight courier to the DOJ and the CFPB as follows:

> To the DOJ:
>
> Chief
> Housing and Civil Enforcement Section
> Civil Rights Division
> U.S. Department of Justice
> 1800 G Street NW, Suite 7002
> Washington, DC 20006
> DJ# 188-77-13
>
> To the CFPB:
>
> Regional Director, CFPB West Region
> Consumer Financial Protection Bureau
> 301 Howard Street
> Suite 1200
> San Francisco, CA 94105

The subject line shall begin: *Synchrony Bank.* Notwithstanding the foregoing, Defendant may

send such reports or notifications by first-class mail, but only if Defendant contemporaneously

sends an electronic version of such report or notification to the email addresses provided by the

DOJ and to Enforcement_Compliance@cfpb.gov.

## D.     COMPLIANCE AND EXTENSIONS OF TIME

39.     Any time limits for performance fixed by this Consent Order may be extended by

mutual written agreement of the DOJ, the CFPB, and Defendant.  Other modifications to this

Consent Order may be made only upon approval of the Court, upon motion by either party.  The

DOJ, the CFPB, and Defendant recognize that there may be changes in relevant and material factual

circumstances during the duration of this Consent Order which may impact the accomplishment of

its goals.  The parties agree to work cooperatively to discuss and negotiate in good faith regarding

any proposed modifications to this Consent Order resulting therefrom.

    **E.**    **OTHER PROVISIONS**

      40.    Except as set forth in Paragraph 44 below, the provisions of this Consent Order

shall not bar, estop, or otherwise prevent the DOJ, the CFPB, or any other governmental agency

from taking any other action against Defendant.

      41.    This Consent Order shall remain effective and enforceable except to the extent

that, and until such time as, any provisions of this Consent Order shall have been amended,

suspended, waived, or terminated in writing by the DOJ or its designated agent.

      42.    Calculation of time limitations shall run from the Settlement Date and shall be

based on calendar days, unless otherwise noted.

      43.    If Defendant has distributed all funds detailed in Paragraph 17 above in

conformance with Paragraph 2 above, this Consent Order shall terminate three months after the

submission of the Offer Exclusion Redress Plan Report to the DOJ and the Regional director; if there

remain funds, as detailed in Paragraph 21 above, this Consent Order shall terminate three months

after Defendant submits the last annual report to the DOJ and the Regional Director, as detailed in

Paragraph 23.

      44.    The DOJ releases and discharges Defendant from all potential liability (other than

as set forth in this Consent Order) for all ECOA claims for discrimination on the basis of national

origin that have been or might have been asserted by the United States Attorney General based on

the practices described in the Complaint, to the extent such practices occurred before the Effective

Date and are known to the DOJ as of the Effective Date of this Consent Order.  Notwithstanding the

foregoing, the practices described in the Complaint may be used by the DOJ in future enforcement

actions against Defendant and its affiliates to establish a pattern or practice of violations or the

continuation of a pattern or practice of violations. This release shall not preclude or affect any right of the DOJ to determine and ensure compliance with the terms and provisions of this Consent Order, or to seek penalties for any violations thereof.

45.     The DOJ and Defendant agree that, as of the Effective Date, litigation is not "reasonably foreseeable" concerning the matters described above. To the extent that the DOJ or Defendant previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described above, it is no longer required to maintain such litigation hold. Nothing in this paragraph relieves the DOJ or Defendant of any other obligations imposed by this Consent Order.

46.     The provisions of this Consent Order shall be binding upon Defendant, and if Defendant is disposed of, spun-off, or sold, such sale, spin-off, or disposition will be contingent upon the new entity or purchaser's agreement to abide by the terms of this Consent Order and all obligations imposed on or undertaken by Defendant herein.

47.     The provisions of this Consent Order shall be enforceable by the DOJ. In the event that any disputes arise about the interpretation of or compliance with the terms of this Consent Order, the DOJ, the CFPB, and Defendant shall endeavor in good faith to resolve any such dispute between themselves before bringing it to the Court for resolution. The DOJ and the CFPB agree that if they reasonably believe that Defendant has materially violated any provision of this Consent Order, they will provide Defendant written notice thereof and give Defendant thirty (30) days to resolve the alleged violation before presenting the matter to the Court. In the event of either a failure by Defendant to perform in a timely manner any act required by this Consent Order or an act by Defendant in violation of any provision hereof, the DOJ may move the Court to impose any remedy authorized by law or equity.

48.     Nothing in this Consent Order shall be construed as allowing Defendant, its Board, its officers, or its employees to violate any law, rule, or regulation.

49.     This Consent Order is enforceable only by the parties.  No person or entity is intended to be a third party beneficiary of the provisions of this Consent Order for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert a claim or right as a beneficiary or protected class under this Consent Order.

50.     Each party to this Consent Order shall bear its own costs and attorney's fees associated with this litigation.

51.     To the extent that a specific action by Defendant is required both by this Consent Order and the Consent Order issued by the CFPB in the administrative adjudication styled *In the Matter of Synchrony Bank*, entered on or about June 19, 2014, action by Defendant that satisfies a requirement under any such administrative adjudication will satisfy that same requirement under this Consent Order.

52.     The Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms, after which time the case shall be dismissed with prejudice.

**IT IS SO ORDERED**, this _16_ day of _June_, 2014.

_____
UNITED STATES DISTRICT JUDGE

The undersigned hereby apply for and consent to the entry of the Order:

For the United States:

ERIC HOLDER
Attorney General


DAVID B. BARLOW                     JOCELYN SAMUELS
United States Attorney              Acting Assistant Attorney General
District of Utah                    Civil Rights Division


_DANIEL D. PRICE_
DANIEL D. PRICE                     STEVEN H. ROSENBAUM
Assistant United States Attorney    Chief
185 South State Street, Suite 300   Civil Rights Division
Salt Lake City, Utah 84111-1506     Housing and Civil Enforcement Section
Tel.: (801) 524-5682
daniel.price2@usdoj.gov

                                    COTY R. MONTAG
                                    Deputy Chief
                                    MARTA CAMPOS
                                    SAMUEL G. HALL
                                    Trial Attorneys (pending admission *pro hac vice*)
                                    United States Department of Justice
                                    Civil Rights Division
                                    Housing and Civil Enforcement Section
                                    950 Pennsylvania Avenue, N.W. – NWB
                                    Washington, DC  20530
                                    Tel.: (202) 514-4733 and (202) 353-4096
                                    Fax: (202) 514-1116
                                    Marta.Campos@usdoj.gov
                                    Samuel.Hall2@usdoj.gov

For Defendant Synchrony Bank:

D. JEAN VETA  (pending admission *pro hac vice*)
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
Tel.: 202.662.5294
Fax: 202.778.5294
jveta@cov.com

24